UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

JASON DEMOULIN                                              CIVIL ACTION

VERSUS
                                                            NO. 17-115-SDD-RLB
LABOR SMART, INC., ET AL.

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on May 19, 2017.

　　　　　　　　　　　　　　　　　　　　　　　／s／ Richard L. Bourgeois, Jr.
　　　　　　　　　　　　　　　　　　　　　RICHARD L. BOURGEOIS, JR.
　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| JASON DEMOULIN | CIVIL ACTION |
| VERSUS | |
| LABOR SMART, INC., ET AL. | NO. 17-115-SDD-RLB |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is Plaintiff's Motion to Remand. (R. Doc. 6). The motion is opposed. (R. Doc. 8).

**I.     Background**

This is a defamation action brought by an employee after his employment was terminated. Jason Demoulin ("Plaintiff") initiated this action on January 26, 2017 in the 19th Judicial District Court, East Baton Rouge Parish, Louisiana, naming as defendants his former employer Labor Smart, Inc. ("Labor Smart") and ABC Insurance Company. (R. Doc. 1-2, "Petition").

Plaintiff alleges that while employed by Labor Smart, he informed his employer that an adjacent office "was infested with pigeons and polluted with pigeon feces." (Petition, ¶ 2). Plaintiff alleges that Labor Smart permitted him to hire a third party inspector, who determined on April 28, 2016 that the infestation constituted "a significant health hazard, and recommended extensive remediation of the premises." (Petition, ¶ 3). Plaintiff alleges that after he informed his employer of the results he "was prohibited from entering the office." (Petition, ¶ 4). Labor Smart terminated Plaintiff's employment on May 5, 2016. (Petition, ¶ 5).

1

Plaintiff alleges that in the months following his termination, he "sought alternative employment in his field in the Baton Rouge area but was prevented from doing so when [Labor Smart] published false and defamatory statements to Plaintiff's potential employers . . . intended to misrepresent Plaintiff's work history, professionalism, integrity, and work product, resulting in damage to Plaintiff's reputation and the prevention of him finding alternative gainful employment." (Petition, ¶ 6). Furthermore, Plaintiff alleges that Labor Smart "wrongfully threatened Plaintiff's potential employers with legal action on the basis of a non-compete agreement which was unenforceable on its face." (Petition, ¶ 7).

Plaintiff alleges that the foregoing "defamatory" and "malicious conduct" "constitutes an invasion of Plaintiff's interest in his reputation and good name all of which statements were made with malice, actual and implied, and tending to harm Plaintiff's reputation so as to lower him in the estimation of the community, deter others from association or dealing with him, destroying his goodwill in the business community, and otherwise exposing him to damages including but not limited to past, present, and future mental anguish and pain, severe and extreme emotional distress, lost wages, loss of future income, diminution of professional reputation, loss of business opportunity, and other types of damages as will be proven at the trial of this matter." (Petition, ¶ 8). Plaintiff seeks to recover "all special and general damages contemplated under Louisiana Law." (Petition, ¶ 9).

On March 1, 2017, Labor Smart removed the action on the basis of this Court's diversity jurisdiction. (R. Doc. 1; R. Doc. 2).[1] Labor Smart asserts in its removal papers that there is complete diversity between the parties because Plaintiff is a citizen of Louisiana, Labor Smart is a citizen of Nevada and Georgia, and the citizenship of the fictitious defendant ABC Insurance

---

[1] Labor Smart amended the Notice of Removal for the sole purpose of correcting the caption. (R. Doc. 2).

Company should be ignored pursuant to 28 U.S.C. § 1446(b). (R. Doc. 2 at 2-3). With regard to the amount in controversy requirement, Labor Smart asserts that "[i]t is clear from the face of Plaintiff's Petition that he seeks a recovery in excess of $75,000, excluding interest and costs." (R. Doc. 2 at 3). In addition to the categories of special and general damages asserted in the Petition, Labor Smart notes that Plaintiff does not "allege that his damages fails to exceed $75,000." (R. Doc. 2 at 3). Labor Smart also asserts that the "lost future wages" sought by Plaintiff could exceed $75,000 if awarded. (R. Doc. 2 at 3). In support of this proposition, Labor Smart submits Plaintiff's pay history while working for Labor Smart. (R. Doc. 2-3).

On March 28, 2017, Plaintiff filed the instant motion to remand, arguing that this Court cannot exercise diversity jurisdiction over this action because Labor Smart has not proven by a preponderance of the evidence that the jurisdictional amount is satisfied. (R. Doc. 6).

## II. Arguments of the Parties

In support of remand, Plaintiff emphasizes that Labor Smart carries the burden of demonstrating that the amount in controversy requirement is satisfied. (R. Doc. 6-1 at 3-5). Plaintiff then argues that his "lost wages amount to nothing close to the required jurisdictional amount," and, at most, that if Plaintiff had remained employed by Labor Smart he would have earned $36,195.90 at the time of removal. (R. Doc. 6-1 at 5-6). Plaintiff suggests that he was paid an hourly wage of $23.20 per hour and that he would not have received wages for vacation days, sick days, or any other time off. (R. Doc. 6-1 at 6). Plaintiff asserts that the foregoing amount is "further reduced by the fact that, after his termination from Labor Smart, Plaintiff sought and obtained alternative employment for which he received compensation." (R. Doc. 6-1 at 6). Finally, Plaintiff asserts that even assuming that Plaintiff would have earned $36,195.90 at the time of removal, the general damage award "rarely exceeds . . . $25,000 for plaintiffs'

3

suffering in employment law claims caused by an employers' defamatory actions." (R. Doc. 6-1 at 6-8). Plaintiff further argues that he should recover costs and attorney's fees incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c) in the amount of $2,338.00 because the removal was not objectively reasonable. (R. Doc. 6-1 at 8-11).

In opposition, Labor Smart again asserts that the Court can reasonably infer from the face of the Petition that the amount in controversy requirement is satisfied in light of the open-ended damages sought by Plaintiff and Plaintiff's failure to expressly state that the jurisdictional amount is not satisfied. (R. Doc. 8 at 2-6). Labor Smart further argues that "Plaintiff's lost wage claim alone exceeds the jurisdictional minimum." (R. Doc. 8 at 6). More specifically, Labor Smart notes that the Petition alleges that Labor Smart's conduct "prevented" Plaintiff from obtaining other employment, and Plaintiff's post-removal assertion that "he has obtained alternative employment that would offset his lost future income" is contrary to the controlling allegations in the Petition at the time of removal. (R. Doc. 8 at 6-7). Labor Smart further asserts that based on his pay history, Plaintiff would have been paid an annual salary of $36,685.23 at the time of removal. (R. Doc. 8 at 7).

### III. Law and Analysis

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)-(a)(1). Subject matter jurisdiction must exist at the time of removal to federal court, based on the facts and allegations contained in the complaint. *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998)

4

("jurisdictional facts must be judged as of the time the complaint is filed"). Remand is proper if at any time the court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c). The removal statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand. *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).

If removal is sought on the basis of diversity jurisdiction, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy." 28 U.S.C. § 1446(c)(2). If, however, the "State practice . . . does not permit demand for a specific sum" removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]." 28 U.S.C. § 1446(c)(2)(A)(ii)-(B). The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied. *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). The defendant may make this showing by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) setting forth facts in controversy that support a finding of the jurisdictional minimum. *Id.* If the defendant can produce evidence sufficient to show by a preponderance that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000. *See*, *e.g.*, *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *Grant v. Chevron Phillips Chem. Co.*, 309 F.3d 864, 869 (5th Cir. 2002); *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1412 (5th Cir. 1995).

As there is no dispute that there is complete diversity between the parties, the Court will turn directly to whether the amount in controversy requirement is satisfied. Because Labor Smart has set forth evidence of Plaintiff's pay history, the Court need not determine whether the amount in controversy is facially apparent. The Court will instead turn to whether, given the

submitted evidence, Labor Smart has met its burden of demonstrating that the amount in controversy requirement is satisfied.

As an initial matter, the Court recognizes that Plaintiff has failed to include any allegations in its pleadings regarding the amount in controversy to support federal jurisdiction, as required by Louisiana Civil Code of Procedure article 893(A)(1). This Court has previously held that the "absence of such a statement in the Petition may be considered in determining whether the amount in controversy is sufficient." *Broussard v. Celebration Station Properties, Inc.*, No. 13-531, 2014 WL 1402144, at *4 (M.D. La. Apr. 10, 2014); *see Weber v. Stevenson*, No. 07-595, 2007 WL 4441261, at *4 (M.D. La. Dec. 14, 2007) ("[T]he court finds that the plaintiffs' failure to follow La. C.C.P. art. 893(A)(1)'s mandate, while entitled to some consideration, in and of itself is not determinative of the amount in controversy."); *see also Chambers Med. Found. v. Chambers*, No. 05-786, 2006 WL 1895479, at *2 n.3 (W.D. La. Jan. 23, 2006) (failure to assert whether the federal amount in controversy requirement is satisfied as required by article 893(A)(1) "creates a 'strong presumption' in favor of jurisdiction"). Accordingly, the Court will give some weight to Plaintiff's failure to follow Article 893(a)(1)'s mandate, but does not find that failure to be determinative of whether the amount in controversy is satisfied.

A review of Louisiana's jurisprudence reveals that "[d]amages for defamation in reported cases run from nominal to $150,000." *Steed v. St. Paul's United Methodist Church*, 728 So.2d 931, 942 (La. App. 2nd Cir. 2000) (affirming general damages award of $90,000 for loss of reputation, embarrassment and humiliation, and loss of income in defamation action) (citing cases). Plaintiff relies on two Louisiana appellate court decisions in support of a finding that general damages in defamation cases involving employers do not generally exceed $25,000. *See Blades v. Oliver*, 740 So.2d 755, 756 (La. App. 1st Cir. 1999) (affirming general damages of

6

$15,000 where former employer directed defamatory statements to new employer and the plaintiff testified that she was embarrassed and "began losing clumps of hair as a result of the defamatory statement"); *Goldsby v. La. Dept. of Corrections*, 861 So.2d 236, 237 (La. App. 1st Cir. 2003) (affirming general damages award of $20,000 in damages for mental anguish where employer terminated employee after reporting violations of state law). Conversely, Labor Smart relies on two Louisiana appellate court decisions affirming general damages on the upper-end of the spectrum. *See Finnie v. LeBlanc*, 875 So. 2d 71 (La. App. 3rd Cir. 2004) (awarding general damages award of $150,000 for defamation and malicious prosecution where plaintiff suffered from depression, was unable to work and take care of her children, and suffered from prominent symptoms of psychological harm several times a week, and was unable to function "even in the simplest of jobs."); *Thompson v. Bank One of Louisiana, NA,* 134 So.3d 653 (La. App. 4th Cir. 2014) (affirming award of $150,000 in general damages for defamation and emotional distress to pastor who suffered "injury to his reputation, personal humiliation, embarrassment, mental anguish, and suffering," including becoming the center of a television news special airing several times over two years).

Given the allegations in the Petition, it appears that the potentially recoverable general damages fall somewhere between the two extremes asserted by the parties. The Court recognizes that, as indicated in the cases cited above, these awards are highly subjective and specific to the facts of each case. While Plaintiff has sued for the same types of reputational harm, loss of goodwill and other related damages, the Court cannot assess the full extent of such damage at this stage in the proceeding. The allegations do allege that the "false and defamatory statements" mispresented Plaintiff's work history professionalism, integrity, and work product, sufficient enough to prevent him from finding employment." (R. Doc. 1-2 at 3). Even if the

7

Court were to accept Plaintiff's proffered lower estimated value of general damages in this action of no more than $25,000, however, the jurisdictional amount is satisfied given the evidence of Plaintiff's wages submitted by Labor Smart.

Plaintiff specifically seeks recovery of "lost wages," "loss of future income," and "loss of business opportunity." (Petition, ¶ 8). The pay history document submitted by Labor Smart indicates that Plaintiff received his first paycheck on January 25, 2016 and his last paycheck on May 9, 2016, and that Plaintiff's gross weekly paycheck for a 40-hour work week totaled $928.10. (R. Doc. 2-3). Accordingly, Plaintiff was effectively earning a gross yearly salary of $48,261.20 or gross hourly wages of $23.20 per hour.[2] Plaintiff concedes that Plaintiff's potential earnings from his date of termination through the time of removal can be measured at $36,195.90 based upon Plaintiff's gross hourly wages of $23.20 per hour. (R. Doc. 6-1 at 6).

Other than Plaintiff's post-removal statements that he obtained "alternative employment for which he received compensation," there is no evidence in the record regarding when Plaintiff obtained such employment, the duration of the employment, or the amount received during the employment. (R. Doc. 6-1 at 6). Accordingly, the Court has no basis for determining the end date of Plaintiff's claim for lost wages as asserted in the Petition. Similarly, the Court has no basis for calculating a reduction of Plaintiff's lost wages based upon the "alternative employment" vaguely referenced in support of remand. Again, Plaintiff alleged in the Petition

---

[2] Labor Smart calculates Plaintiff's annual income at $36,685.33 in light of Plaintiff's net weekly paycheck of $706.60 after the deduction of state and federal taxes. (R. Doc. 8 at 3; R. Doc. 2-3). However, "the jurisprudence is clear that gross rather than net income is used when determining lost wages." *Brown v. City of Madisonville*, 5 So. 3d 874, 888 n. 7 (La. App. 1st Cir. 2008); *see also Randolph v. Laeisz*, 896 F.2d 964, 967 (5th Cir. 1990) ("Calculation of the lost income stream begins with the gross earnings of the injured party at the time of the injury."); *Hyde v. Stanley Tools, a Div. of The Stanley Works, Inc.*, No. 98-2757, 2000 WL 222175, at *1 (E.D. La. Feb. 24, 2000) ("Louisiana's intermediate appellate courts have spoken with near unison that only gross wages, not net wages, should be considered by the jury in reaching any determination for damages.") (citing cases).

that the defamatory acts of Labor Smart "prevented" him from obtaining any alternative employment. (Petition, ¶ 6). Plaintiff did not amend this allegation prior to removal.

Given the evidence of Plaintiff's wages earned while employed by Labor Smart, the Court concludes that Plaintiff's allegations for "lost wages," "loss of future income," and "loss of business opportunity" seek an amount over $75,000.00, exclusive of costs and interests, when combined with Plaintiff's claims for general damages.[3]

Based on the foregoing, the Court concludes that Defendants have met their burden of establishing that the amount in controversy requirement is satisfied.

## IV. Conclusion

For the foregoing reasons, the Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

**IT IS RECOMMENDED** that Plaintiff's Motion to Remand (R. Doc. 6) be **DENIED**.

Signed in Baton Rouge, Louisiana, on May 19, 2017.

                                    **RICHARD L. BOURGEOIS, JR.**
                                    **UNITED STATES MAGISTRATE JUDGE**

---

[3] If proven, an award of lost wages can well exceed the recoverable amount in general damages awarded in a defamation action. *See Melancon v. Hyatt Corp.*, 589 So. 2d 1186, 1191 (La. Ct. App. 4th Cir. 1991) (affirming award of lost wages of $87,000 in defamation action where the plaintiff was making $11.32 per hour with benefits at the time he was terminated, obtained employment later that same year at $8.40 per hour without benefits, and the award was supported by the testimony of an expert economist; but also decreasing $90,000 award for mental pain and suffering, embarrassment and humiliation, and loss of reputation to $10,000 in light of the evidence).